IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Property Tax

HARISH PATEL,                              )
                                           )
                    Plaintiff,             )        TC-MD 110276D
                                           )
        v.                                 )
                                           )
MARION COUNTY ASSESSOR,                    )
                                           )
                    Defendant.             )        **DECISION**

Plaintiff appeals the land real market value of property identified as Accounts R26099,

R344041 and R344042, for tax year 2010-11.[1]  A trial was held in the Oregon Tax Court

Mediation Center, Salem, Oregon on November 15, 2011.  Harish Patel (Patel) appeared on his

own behalf.  Joseph Skilton (Skilton) testified on behalf of Plaintiff.  Scott A. Norris, Assistant

County Counsel, appeared on behalf of Defendant.  Thomas D. Rohfling (Rohfling), Commercial

Appraiser, testified on behalf of Defendant.

Plaintiff's Exhibits 1 through 4 and Defendant's Exhibit A were received without

objection.

## I.  STATEMENT OF FACTS

The parties agree that the subject property is three bare land parcels, "long and

rectangular" in shape, that are visible but not accessible from Interstate 5.  (Def's Ex A at 3.)

Plaintiff testified that he purchased the subject property before the land was subdivided into three

parcels.  The subject property is located in northeast Salem in an area zoned as Industrial Park.

(*Id*. at 3, 4.)  Rohfling testified that the subject property has "utilities available" and is located

adjacent to a "multi-family development to the north, a hotel to the south, an apartment complex

_____

[1] At the initial case management held June 14, 2011, Plaintiff verbally amended his Complaint, stating that
he was appealing tax year 2010-11, not tax year 2009-10 as stated on his complaint.

across the street to the east and also a senior housing project acrosss the street to the east." (*Id*. at 4.) Rohfling stated that "Lancaster Drive and Chemeketa Community College are .25 miles to the west" and many local residents who are familiar with Salem use "Fisher Road," the subject property's access road, as a "through fare." The parties discussed the subject property's location and the impact of location on value, concluding that the visibility from I-5 "helps the local market know what's there."

The parties agree that the cost approach and income approach are not applicable valuation approaches because the land is not developed. Skilton and Rohlfing relied on comparable sales to determine the subject property's real market value as of the assessment date, January 1, 2010.

Skilton testified that he did not make an "appraisal of the subject property." He testified that he "gathered" from various sources "comparable sales," based on similar "size" and "freeway influence" as the subject property. Skilton selected six properties as comparable to the subject property, located in Washington and Oregon and varying in size from 3.34 acres to 6.40 acres. (Ptf's Ex 2.) For Skilton's comparable properties, the date of sale ranged from April 2008, to June 2010, and the unadjusted sale price per square foot ranged from $1.23 to $1.94. (*Id*.)

Skilton testified that he selected "larger" sized parcels because "smaller parcels attract more interest for use and assemblage" but sell for "a higher price per square foot." He testified that a selling price for a smaller size parcel should be adjusted "downward" if it was being used to determine the subject property's real market value. Skilton was asked if he knew whether the zoning for properties in Washington was the same as the zoning in Salem and he responded that the properties "are generally located in light industrial zones" with "similar highest and best use"

as the subject property. Rofhling testified that he "used sales in our market" because the "economics for a developed use could be similar but subject property allows for uses that he knows are surrounded by other similar uses" and he would not "consider sales in Portland" when looking for properties comparable to the subject property.

Rohlfing, who has been employed by Defendant for 17 years and in his current position for five years, testified that for the subject property he considered the four elements of highest and best use: legally permissible, physically possible, financially feasible and maximally productive. (Def's Ex A at 6.) Rohfling listed the subject property's legally permissible uses, referencing the City of Salem zoning code. (*Id*. at 12-16.) He testified that the subject property would be "easy to develop" because the "terrain is flat." Rohlfing testified that a developer could "work around the utilities easement" because no permanent structures could be built on the easement, but landscaping or a parking lot would be possible.

Patel disagreed, stating there can be no development on "top of the 30" sewer pipes" buried in the easement and he "thinks that is a huge deterrent to development." Patel questioned Rohfling about a proposed zoning change for 2011. Rohfling responded, stating that he knew "nothing about a proposed change," but if the zoning did change it "could affect the highest and best use development."

Rohlfing testified that for his comparable sale approach he selected five properties located in Salem and Hubbard, Oregon that sold in 2009 and 2010 and evidenced similar zoning and current development potential like the subject property. (Def's Ex A at 7.) He briefly reviewed each comparable property, noting the qualitative differences between each property and the subject property. (*Id*.) The unadjusted sale prices ranged from $4.00 to $4.53 per square foot with the exception that comparable sale 5 was $6.03 per square foot because even though the

parcel size was 4.62 acres the "[b]uyer viewed [the subject property] as 2 usable acres" available for development. (*Id*.)

Rohfling testified that he concluded that comparable property 3, "a .41 acre parcel near Madison Street in northeast Salem" that was purchased by "an adjacent owner" who owned a "tax lot to the east" was most comparable to the subject property. (*Id*.) Patel asked if the sale to an adjacent property owner "affected the pricing compared to a stand alone" parcel. The parties agreed that Rohlfing's comparable property 3 was "marketed for a long period of time." Rohlfing testified that he concluded after considering size, location, visibility and access that comparable property 3 was "considered fairly equal to the subject property." Rohfling computed an unadjusted sale price of $4.20 for comparable property 3. (*Id*.)

Patel questioned Rohfling about the comparables, noting comparable property 4 was purchased by a "buyer in the immediate area" and comparable 5 was an improved property but prior to sale the hotel was demolished. He asked Rohfling how he "valued" the "wetlands" located on comparable 5. Rohfling disputed the description, stating it was a "creek in a gully" and it could "have value, depending on the buyer" and if that individual developed the land to "take advantage of the view." Rohfling testified that he did not think "$6 per square foot" was "reasonable for market as of January 1, 2010," for the subject property. Patel asked Rohfling about a sale of a 2.3 acre parcel for $2.31 per square foot in 2010; Rohfling responded that he was unaware of the sale and it was not in "the Marion County database."

Rohfling stated in his appraisal report that after considering each of the three approaches to value he concluded that the only applicable approach is the sales comparison approach. (*Id*. at 8.) He wrote:

/ / /

/ / /

> "Conclusion for land price per square foot of the subject is $4.25 per square foot. This estimate is arrived by evaluating each of the comparables and considering all factors of comparability."

(*Id.*) Using $4.25 per square foot, Rohlfing computed "the fee simple estimated real market value of the subject properties on the assessment date of January 1, 2010 were: R26099: * * * $175,870; R344041: * * * $342,490; and R344042: * * * $342, 490." (*Id.*)

## II. ANALYSIS

The issue before the court is the 2010-11 real market value of approximately 3.0 acres of undeveloped land. "Real market value is the standard used throughout the ad valorem statutes except for special assessments." *Richardson v. Clackamas County Assessor*, TC-MD No 020869D, WL 21263620 at *2 (Mar 26, 2003) (citing *Gangle v. Dept. of Rev.*, 13 OTR 343, 345 (1995)). Under ORS 308.205(1),[2] real market value is defined as: "* * * the amount in cash that could reasonably be expected to be paid by an informed buyer to an informed seller, each acting without compulsion in an arm's-length transaction occurring as of the assessment date for the tax year."

A.      *Approaches of Valuation--Real Market Value*

The three different methods used to determine real market value are (1) the cost approach, (2) income approach, and (3) sales comparison or market approach. *Allen v. Dept. of Rev.*, 17 OTR 248, 252 (2003). When determining the real market value of a property, the three different approaches to valuation must all be considered, even if one of the approaches is found to be unreliable. *See* ORS 308.205(2) and OAR 150-308.205-(A)(2).[3] Plaintiff did not present evidence using any of the three approaches. Defendant relied on the comparable sales approach.

/ / /

---

[2] All references to the Oregon Revised Statutes (ORS) are to 2009.

[3] All references to the Oregon Administrative Rules (OAR) are to the rules in effect in 2009.

B.      *Comparable Sales Approach*

A comparable sales approach "may be used to value improved properties, vacant land, or land being considered as though vacant." *Chambers Management Corp v. Lane County Assessor,* TC-MD No 060354D at 6 (Apr 3, 2007), citing Appraisal Institute, *The Appraisal of Real Estate* 335 (12th ed 2001). ORS 308.205(2) provides in pertinent part that "[r]eal market value in all cases shall be determined by methods and procedures in accordance with rules adopted by the Department of Revenue." The Department of Revenue adopted OAR 150-308.205-(A)(2)(c), that states in part:

> "In utilizing the sales comparison approach only actual market transactions of property comparable to the subject, or adjusted to be comparable, will be used. All transactions utilized in the sales comparison approach must be verified to ensure they reflect arms-length market transactions."

Rohfling selected five properties for his comparable sales approach, based on similarities to the subject property. Based solely on the characteristics of the comparable properties with adjustments, Rohfling concluded that the subject property was most similar to a .41 acre parcel even though the smallest of the three subject property parcels is almost an acre. Rohfling concluded from a range ($4.00 to $6.03 per square foot) of real market values that $4.25 per square foot was the best estimate of the "fee simple estimated real market value." (Def's Ex A at 8.) Using $4.25 per square foot, Rohlfing computed "the fee simple estimated real market value of the subject properties on the assessment date of January 1, 2010 were: R26099:  * * * $175,870; R344041: * * * $342,490; and R344042: * * * $342, 490." (*Id.*)

C.      *Burden of Proof*

As the party seeking affirmative relief, Plaintiff bears the burden of proving that the subject property's land real market value is incorrect on the tax roll. ORS 305.427. Plaintiff must establish his claim "by a preponderance of the evidence, or the more convincing or greater

weight of evidence." *Schaefer v. Dept. of Rev.*, TC No 4530 at 4 (July 12, 2001) (citing *Feves v. Dept. of Rev.*, 4 OTR 302 (1971)).

Plaintiff must present the greater weight of evidence to support his requested real market value reduction. This court has stated that "it is not enough for a taxpayer to criticize a county's position. Taxpayers must provide competent evidence of the [real market value] of their property." *Poddar v. Dept. of Rev.*, 18 OTR 324, 332 (2005) (quoting *Woods v. Dept. of Rev.*, 16 OTR 56, 59 (2002) (citation omitted). Competent evidence includes appraisal reports and sales adjusted for time, location, size, quality, and other distinguishing differences, and testimony from licensed professionals such as appraisers, real estate agents and licensed brokers.

Plaintiff failed to use any of the three common approaches prescribed by statute to determine the real market value the subject property. Plaintiff's expert witness, Skilton, testified that he relied on sales data he collected from various sources. Skilton made no qualitative or quantitative adjustments to the reported sale prices.

In determining real market value, the court looks for "arm's length sale transactions of property similar in size, quality, age and location" to the subject property in order to reach a correct real market value. *Richardson v. Clackamas County Assessor*, TC-MD No 020869D, WL 21263620 at * 3 (Mar 26, 2003). Because the subject property is bare land, size and location would be key characteristics considered by the court. Skilton's comparable properties ranged in size from 3.34 acres to 6.40 acres; the subject property is approximately 4.65 acres. Skilton did not adjust his selected comparable properties for size. For the four properties located in Washington state that he identified as comparable to the subject property, Skilton did not provide evidence that a property's location in a different state is in fact comparable to the subject property. Skilton provided listing or sale confirmation documentation for only one of the six

properties he identified as comparable. For the one property located in Scappoose, Oregon, Skilton provided no information about the location in comparison to the subject property located in Salem, Oregon. There was no evidence Skilton personally viewed the properties and confirmed comparability to the subject property.

Plaintiff's evidence in support of his requested real market value reduction is inconclusive. When the "evidence is inconclusive or unpersuasive, the taxpayer will have failed to meet his burden of proof * * *." *Reed v. Dept. of Rev.*, 310 Or 260, 265, 798 P2d 235 (1990). Plaintiff has failed to carry his burden of proof.

Even though the burden has not shifted under ORS 305.427, the court has jurisdiction to determine the "real market value or correct valuation on the basis of the evidence before the court, without regard to the values pleaded by the parties." ORS 305.412. Defendant's comparable sales approach concluded a real market value of $4.25 per square foot. (Def's Ex A at 8.) Rohlfing's selected comparable properties ranged in price per square foot from $4.00 to $6.03. (*Id*. at 7.)

ORS 305.275(1)(a) requires that a taxpayer be "aggrieved" in order to appeal to this court; if a taxpayer is not "aggrieved" within the meaning of ORS 305.275, then that taxpayer does not have standing to appeal. "In requiring that taxpayers be 'aggrieved' under ORS 305.275, the legislature intended that the taxpayer have an immediate claim of wrong." *Kaady v. Dept. of Rev.*, 15 OTR 124, 125 (2000). This court has consistently interpreted ORS 305.275(1) to require that a taxpayer's requested relief result in tax savings to the taxpayer. *See Parks Westsac L.L.C. v. Dept. of Rev.*, 15 OTR 50, 52 (1999).

Based on the evidence before the court, the real market value determined using any of Rohfling's prices per square foot would result in a real market value in excess of the maximum

assessed value. The court cannot conclude that there would be a tax savings to Plaintiff within the range of values that are supported by Defendant's evidence.

### III. CONCLUSION

After careful consideration of the testimony and evidence, the court concludes that Plaintiff failed to carry his burden of proof. Based on the evidence presented, the subject property's real market value on the 2010-11 real market tax roll is sustained. Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiff's appeal is denied.

Dated this ____ day of January 2012

_____
JILL A. TANNER
PRESIDING MAGISTRATE

*If you want to appeal this Decision, file a Complaint in the Regular Division of the Oregon Tax Court, by mailing to: 1163 State Street, Salem, OR 97301-2563; or by hand delivery to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your Complaint must be submitted within 60 days after the date of the Decision or this Decision becomes final and cannot be changed.*

*This Decision was signed by Presiding Magistrate Jill A. Tanner on January 31, 2012. The Court filed and entered this Decision on January 31, 2012.*